3 P.3d 67

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Douglas C. CARLSON, Defendant–Appellant.**

No. 25100.

Court of Appeals of Idaho.

June 8, 2000.

Woolf, Combo & Thompson, Idaho Falls, for appellant. Stevan H. Thompson argued.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

PERRY, Chief Judge.

Douglas C. Carlson appeals from a judgment of conviction entered after a jury verdict of guilty for first degree murder. I.C. § 18–4003(d). For the reasons set forth below, we affirm.

## I.

## BACKGROUND

Carlson became involved in a relationship with the mother of twenty-two-month-old Nicole, the victim in this case. Carlson often stayed the night at their apartment and babysat Nicole. On or about August 6, 1995, Carlson showed the mother some bruises on Nicole. At approximately the same time, it was also noticed that she was limping. During the night of August 6, Carlson was alone with Nicole. The next morning, Nicole's mother noticed additional bruising. Nicole was seen by a physician on August 7.

Between August 7 and August 15, Carlson was alone with Nicole on several occasions. On August 16, Nicole's mother left the apartment at approximately 10:40 a.m. and returned at approximately 12:40 p.m. Carlson was alone with Nicole while the mother was out of the apartment. At approximately 3:00 p.m., Nicole was found wheezing, limp, and unresponsive and was taken to the hospital. While attempting to treat Nicole, the doctors discovered that she had sustained severe brain injuries consistent with shaken-baby syndrome. Nicole died on August 17, 1995. An autopsy revealed that she also had a lacerated liver, healing rib fractures, and a healing fracture of the left tibia.

Carlson was arrested and charged with first degree murder. A jury found him guilty. Thereafter, Carlson filed a motion for judgment of acquittal and a motion for a new trial. After a hearing, the district court denied Carlson's motions. Carlson appeals.

## II.

## ANALYSIS

### A. Motion for Judgment of Acquittal

After the jury returned its verdict, Carlson moved for a judgment of acquittal pursuant to I.C.R. 29, arguing that the evidence presented at trial was insufficient to support the jury's guilty verdict. After a hearing on the matter, the district court denied the motion. Carlson asserts that the district court's denial was erroneous.

Carlson's motion challenged the sufficiency of the state's evidence. In reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind would conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt. *State v. Kopsa*, 126 Idaho 512, 521, 887 P.2d 57, 66 (Ct.App.1994); *State v. Printz*, 115 Idaho 566, 567, 768 P.2d 829, 830 (Ct.App.1989). This Court will not substitute its view for that of the jury as to the credibility of witnesses, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App. 1991). On appeal, where a defendant stands convicted, the evidence is viewed in the light most favorable to the prosecution. *State v. Gardiner*, 127 Idaho 156, 163, 898 P.2d 615, 622 (Ct.App.1995).

### 1. *Holder* [1] standard

Initially, Carlson argues that the district court, in ruling on his motion for judgment of acquittal, improperly applied the *Holder* instruction. In pertinent part, a *Holder* instruction states: "If the [circumstantial] evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to the defendant's innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and to reject the other which points to the defendant's guilt." ICJI 203.

On appeal, Carlson argues that it was just as reasonable for the district court to conclude that the fatal injury occurred while the mother was home alone with Nicole during the afternoon of August 16. When a defendant moves under I.C.R. 29 for a judgment of acquittal, the trial court, *viewing the evidence in the light most favorable to the state*, must determine whether the inculpatory evidence presented as to any essential

element of the crime is so insubstantial that jurors could not help but have a reasonable doubt. *State v. Hoffman*, 116 Idaho 480, 482, 776 P.2d 1199, 1201 (Ct.App.1989).

The Idaho Supreme Court has previously addressed Carlson's argument and has held that the *Holder* standard does not apply to a district court's consideration of a defendant's motion for a judgment of acquittal. In *State v. Merwin*, 131 Idaho 642, 962 P.2d 1026 (1998), the defendant argued that under *Holder*, the district court should have granted his motion for judgment of acquittal. The *Merwin* Court held that when a jury verdict is supported by substantial and competent evidence, it would be "improper for the trial judge to substitute his view of the facts for the jury's and grant the motion for a judgment of acquittal." *Id.* at 645, 962 P.2d at 1029.

Therefore, *Holder* is inapplicable to a district court's decision of whether to grant an I.C.R. 29 motion.[2]

### 2. Sufficiency of the evidence

Carlson challenges the district court's determination, in its order denying his motion for judgment of acquittal, that there was substantial evidence from which the jury could infer that he abused Nicole from August 5, 1995, until her death. Doctor Ellwein, the pathologist who performed the forensic autopsy testified at trial. According to Dr. Ellwein, four of Nicole's ribs had been broken on the left side. These ribs were broken within two weeks of Nicole's death. Doctor Ellwein also testified that Nicole had a tibia fracture that was less than two weeks old. Doctor Britton, an expert in child abuse, also testified. According to Dr. Britton, Nicole suffered physical abuse over the last few weeks of her life.

During the trial, there was testimony that Carlson was alone with Nicole on several occasions between August 5 and August 16. On August 5, Carlson spent the night at the mother's apartment. The following day,

---

1. *See State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979).

2. We also note that a Holder instruction does not apply to this Court's review of a jury verdict. *State v. Randles*, 117 Idaho 344, 350, 787 P.2d 1152, 1158 (1990).

Carlson showed the mother that Nicole had bruising "the size of fingertips" on her left side and on her back. According to the mother, during the night of August 6, Carlson took Nicole outside and was out of her sight for approximately ten minutes. The next morning, the mother noticed a bruise on Nicole's head. The mother also noticed approximately fifteen to twenty bruises in the same location on Nicole's left side as the other fingertip-sized bruises.

Carlson argues that "from reading the entire record that a number of people had access to Nicole during August 5 through August 16 and particularly her mother ... who [was] the most likely individual to have inflicted these injuries." However, the jury could reasonably draw an inference that Carlson inflicted the injuries based on the timing of the injuries and Carlson's presence with the child. This inference is supported by substantial evidence. Therefore, the district court's consideration of this evidence, upon its denial of Carlson's motion for a judgment of acquittal, was not error.

■ Carlson also disputes the district court's determination that there was sufficient evidence to permit the jury to conclude that the fatal injury was inflicted before the mother returned to the apartment on August 16. Nicole arrived at the emergency room at approximately 3:00 p.m. on August 16. Doctor Britton testified that, in her expert opinion, the fatal brain injury occurred within six hours of Nicole's admission to the hospital.

At trial, several individuals testified to hearing screaming coming from the mother's apartment on the day of Nicole's death. One witness, who lived downstairs from the apartment, testified that he heard screaming sometime after 11:00 a.m. Another witness, who was also lived near the apartment, testified that he heard banging and two voices screaming sometime between 11:00 a.m. and 12:00 p.m. He testified that the two voices were a little girl's and an angry male's. The witness testified that these sounds were coming from the direction of the apartment. Finally, a third witness, who lived across and down the street from Nicole's residence, testified that she heard a child screaming and a male's voice screaming back at the child shortly after 11:00 a.m. The witness identified Nicole's apartment as the origin of the screams and identified the male's voice as Carlson's.

Although contradicted by Carlson's testimony, the mother testified that, upon her return home, at approximately 12:40 p.m., Carlson informed her that Nicole got "crabby" and that he had put her down for a nap. The mother also testified that, at one point, Carlson entered the bedroom and looked at Nicole. According to the mother, Carlson then rolled Nicole over so that she was facing the wall. The mother was approximately one-half of the way into the bedroom when Carlson put his arm around her and guided her out.

Based on the above testimony, the jury could reasonably conclude that the fatal injury was inflicted somewhere between 11:00 a.m. and 12:00 p.m. on August 16—a time during which Carlson was alone with Nicole before the mother returned home. Thus, Carlson has failed to demonstrate that the district court's consideration of this evidence was error.

■ Additionally, this Court's independent review of the record leads us to hold that a reasonable mind could conclude that the state proved Carlson's guilt as to each material element of felony murder beyond a reasonable doubt. Therefore, the district court did not err when it denied Carlson's motion for a judgment of acquittal.

## B. Motion for New Trial

■ After the jury returned its verdict, Carlson moved for a new trial pursuant to I.C.R. 34 and in the interest of justice. The district court denied this motion. A decision on a motion for new trial under I.C.R. 34 is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct.App. 1995). When a trial court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such

discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Idaho Code Section 19–2406 sets forth the only grounds permitting the grant of a new trial. *State v. Cantu*, 129 Idaho 673, 675, 931 P.2d 1191, 1193 (1997). It has been consistently recognized that I.C. § 19–2406 is a "legitimate exercise of the legislature's power to define the substantive law of this state, and sets out an exclusive list of the grounds for a new trial." *State v. Jones*, 127 Idaho 478, 481, 903 P.2d 67, 70 (1995). Thus, I.C.R. 34 does not provide an independent ground for a new trial, but states the standard that the trial court must apply when it considers the statutory grounds. *Cantu*, 129 Idaho at 675, 931 P.2d at 1193.

It is evident from the record that the district court perceived the issue of whether to grant Carlson's motion as one of discretion. Additionally, the record on appeal indicates that the district court reached its decision by an exercise of reason. Therefore, we will focus on the second prong of *Hedger*— whether the district court acted within the boundaries of its discretion and consistently with any legal standards applicable in its decision denying Carlson's motion.

### 1. Relevance

Carlson argues that there was insufficient foundation laid for the testimony of the three witnesses regarding the screams heard from the area of the apartment between approximately 11:00 a.m. and 12:00 p.m. As we interpret Carlson's argument, he contends that due to this lack of foundation, the evidence was irrelevant.

Relevant evidence is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Evidence which is not relevant is not admissible. I.R.E. 402. The initial question of relevancy is a question of law over which this Court

exercises free review. *State v. Raudebaugh*, 124 Idaho 758, 766, 864 P.2d 596, 604 (1993). Accordingly, the admission of irrelevant evidence would be an error of law—one of the statutory grounds for a new trial. *See* I.C. § 19–2406(5).

The three witnesses testified to hearing screams from the apartment between approximately 11:00 a.m. and 12:00 p.m. According to other testimony elicited at trial, the fatal injuries were inflicted on Nicole sometime between 9:00 a.m. and 3:00 p.m. Nicole's mother testified that, upon her return home at 12:40 p.m., Carlson had informed her that Nicole had gotten "crabby" and that he had put her down for a nap. Nicole's mother further testified that, when she attempted to check on Nicole, Carlson guided her out of the bedroom. Nicole's mother testified that she did not closely observe Nicole until approximately 3:00 p.m., a time at which Carlson found Nicole wheezing, limp, and unresponsive. We hold that the testimony of the three witnesses had a tendency to demonstrate that Nicole's fatal injuries were inflicted between 11:00 a.m. and 12:00 p.m., during a time which Carlson was alone with the Nicole. This was certainly a fact of consequence, and the testimony was therefore relevant. Thus, Carlson is not entitled to a new trial on this ground.

### 2. I.R.E. 403

Carlson further argues that I.R.E. 403 was also violated by the testimony of the three witnesses regarding the screams. As we interpret the argument, Carlson contends that because there were insufficient foundations laid to establish a specific link between the screams and the injuries inflicted on Nicole, the prejudicial effect of this testimony substantially outweighed its probative value.

Idaho Rule of Evidence 403 states that, although relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to the party's case. *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct.App.1994). The

rule protects against evidence that is unfairly prejudicial—that is if it tends to suggest decision on an improper basis. *Id.* This is so because almost all evidence in a criminal trial is demonstrably admitted to prove the case of the state and, thus, results in prejudice to a defendant. *Id.*

■ Balancing of probative value against prejudice and the ultimate decision to admit or exclude the evidence is within the trial court's sound discretion. *State v. Hairston,* 133 Idaho 496, 502, 988 P.2d 1170, 1176 (1999); *Floyd,* 125 Idaho at 653, 873 P.2d at 907. Thus, the decision of whether to admit evidence pursuant to I.R.E. 403 is not a question of law.

■ Carlson failed to object, on I.R.E. 403 grounds, during trial to the testimony he asserts was erroneously admitted. For an objection to be preserved for appellate review, the specific ground for the objection must be clearly stated. I.R.E. 103(a)(1); *State v. Gleason,* 130 Idaho 586, 592, 944 P.2d 721, 727 (Ct.App.1997). Objecting to the admission of evidence on one basis does not preserve a separate and different basis for exclusion of the evidence. *State v. Higgins,* 122 Idaho 590, 596, 836 P.2d 536, 542 (1992); *Gleason,* 130 Idaho at 592, 944 P.2d at 727.

■ It is a fundamental tenet of appellate law that a proper and timely objection must be made in the trial court before an issue is preserved for appeal. If not raised below, the objection may not be considered for the first time on appeal. *State v. Johnson,* 126 Idaho 892, 896, 894 P.2d 125, 129 (1995); *State v. Rozajewski,* 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct.App.1997). Nevertheless, we may consider fundamental error in a criminal case, even though no objection was made at trial. *Johnson,* 126 Idaho at 896, 894 P.2d at 129; *State v. Bingham,* 116 Idaho 415, 423, 776 P.2d 424, 432 (1989); *Rozajewski,* 130 Idaho at 645, 945 P.2d at 1391. A fundamental error is one that so profoundly distorts the proceedings that it produces manifest injustice, depriving the criminal defendant of the fundamental right to due process. *State v. Hadley,* 122 Idaho 728, 731, 838 P.2d 331, 334 (Ct.App.1992).

However, an abuse of discretion in admitting evidence does not constitute fundamental error because it does not go to the foundation of the case or take from the defendant a right which was essential to his or her defense. *Bingham,* 116 Idaho at 423, 776 P.2d at 432. Thus, the admission of the testimony does not constitute fundamental error. Accordingly, because Carlson failed to object under I.R.E. 403 during trial, we will not consider this issue on appeal.

### 3. Prosecutorial misconduct

■ Carlson alleges that the prosecutor committed several acts of misconduct during trial. As stated above, the grounds upon which a district court may grant a new trial to a noncapital criminal defendant are set forth in I.C. § 19-2406. Although in certain circumstances prosecutorial misconduct may be properly raised in an application for post-conviction relief, allegations of prosecutorial misconduct at trial are not among the grounds for a new trial provided by I.C. § 19-2406. Accordingly, the district court did not abuse its discretion in denying Carlson's motion on this basis. *See State v. Jones,* 127 Idaho 478, 481, 903 P.2d 67, 70 (1995).

### 4. Re-reading testimony

During its deliberations, the jury requested that a witness's testimony be read back. The district court complied with the jury's request. Carlson asserts that the district court improperly read back the testimony without determining the exact purpose for which the jury desired the testimony. He contends that without such an inquiry by the district court, it could not determine whether the jury made the request for an improper purpose.

Idaho Code Section 19-2204 states:

After the jury have retired for deliberation, if there is any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney

and the defendant or his counsel, or after they have been called.

■ Pursuant to I.C. § 19–2204, a trial court must attempt to meet any reasonable requests by the jury for the re-reading of testimony. The trial court should exercise its discretion to ensure that a party to the litigation is not prejudiced. *State v. Couch,* 103 Idaho 205, 208, 646 P.2d 447, 450 (Ct. App.1982).

■ The letter from the jury to the district court requesting the re-reading of the witness's testimony is not contained in the record on appeal. However, in its order denying Carlson's motion for new trial, the district court found that it "could properly infer from the jury's request to have [the witness's] testimony read back to them that the jury had a disagreement regarding the testimony." In *Couch,* the court held that, from a jury's request for testimony to be read back, a trial court could infer that the jury had some disagreement concerning that evidence. Carlson has failed to provide any evidence that the jury's request was for an improper purpose. Therefore, Carlson has failed to demonstrate that the district court's re-reading of the witness's testimony was error.[3]

### 5. Mother's courtroom presence

Carlson asserts that his right to a fair trial was violated because the victim's mother, who was also a witness during the trial, was permitted to remain in the courtroom throughout the trial and, therefore, the jury observed her crying on several occasions. The victim's mother was present throughout the trial pursuant to I.C. §§ 19–5306(1)(b) and –5306(3). Carlson does not contend, nor does the record indicate, that he made any specific motion to exclude her from the courtroom prior to her testimony.

■ The record indicates that, at one point during the trial, Nicole's mother was seated near the jury, and was weeping. Carlson requested that she be moved across

the courtroom. The district court complied with Carlson's request. On appeal, Carlson has failed to demonstrate that the mother's presence in the courtroom violated his right to a fair trial. Additionally, Carlson has failed to show that the district court's granting of the remedy Carlson requested was insufficient to ensure his right to due process. Therefore, Carlson has failed to show error on the part of the district court.

### 6. Cumulative error

■ Carlson also argues that, because of several alleged errors that occurred during his trial, he was denied due process. The cumulative error doctrine "refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, the errors show the absence of a fair trial, in contravention of the defendant's constitutional right to due process." *State v. Peite,* 122 Idaho 809, 822, 839 P.2d 1223, 1236 (Ct.App.1992).

■ We have determined either that Carlson waived the issues for the purposes of his appeal or that none of the issues Carlson complains of were error. Therefore, we decline Carlson's invitation to apply the cumulative error doctrine in this case. *See State v. Lovelass,* 133 Idaho 160, 171, 983 P.2d 233, 244 (Ct.App.1999) (in order to find cumulative error, this Court must first conclude that there is merit to more than one error alleged). Based on the foregoing, the district court did not abuse its discretion when it denied Carlson's motion for new trial.

### C. Jury Instructions

■ Carlson argues that the district court erred when it instructed the jury in this case. Preliminarily, we note that counsel for Carlson did not object to the pertinent jury instructions at trial. Normally, the failure to object below precludes consideration of an alleged error on appeal. However, the failure to object to an instruction at trial in a criminal case does not constitute a waiver of any objection to the instruction on appeal.

---

**3.** Before the district court, Carlson also argued that re-reading the testimony unfairly emphasized that testimony. Although Carlson does not make that argument before this Court, we note that the district court had the witness's entire testimony read back to the jury, thereby not focusing on any particular statement by that witness.

*State v. Smith,* 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990); *State v. Carsner,* 126 Idaho 911, 914, 894 P.2d 144, 147 (Ct.App.1995). Thus, we will consider Carlson's challenge to the jury instruction language. *See State v. Buckley,* 131 Idaho 179, 182, 953 P.2d 619, 622 (Ct.App.1997).

Whether a jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993).

## 1. Intent

Carlson asserts that in order to have been properly instructed, the jury should have been informed that, to sustain a charge of first degree felony murder based on the aggravated battery on a child under twelve years of age, the state needed to prove beyond a reasonable doubt that he possessed the specific intent to commit an aggravated battery. Idaho Code Section 18–903, written in the disjunctive, sets forth three alternative methods of committing a battery. Idaho Code Section 18–903(a) states that a battery is any "[w]illful and unlawful use of force or violence upon the person of another." This form of battery, in Idaho, is a general intent crime. During appellate oral argument, counsel for Carlson conceded this point.

However, in order to amount to first degree murder, two additional factors must be added to a simple battery. First, the battery must be aggravated. A person commits aggravated battery if the battery causes great bodily harm. I.C. § 18–907. There is nothing in the language of the aggravated battery statute to indicate that the legislature intended to impose a specific intent requirement on this elevated form of simple battery. Thus, we conclude that I.C. § 18–907, like battery, is a general intent crime. During appellate oral argument, Carlson's counsel conceded that aggravated battery is also a general intent crime in Idaho.

Finally, all aggravated batteries that result in death are not predicate felonies under Idaho's felony murder rule as it is codified in I.C. § 18–4003(d). Prior to its amendment in 1991, an aggravated battery that resulted in a death did not constitute felony murder under I.C. § 18–4003(d). *See* 1977 Idaho Sess. Laws Ch. 154 at 391. The legislature saw fit, in 1991, to amend the statute to include, in the felony murder provision of I.C. § 18–4003, a provision permitting a conviction of first degree felony murder for an aggravated battery on a child under twelve years of age that resulted in a child's death. *See* 1991 Idaho Sess. Laws Ch. 227 at 547. The legislative purpose underlying the amendment of I.C. § 18–4003(d) was "to allow for the prosecution for the crime of first degree murder of someone who inflicts great bodily harm on a child under twelve years old ... if the child dies as a result." Statement of Purpose S.B. 1040. The amendment was meant to "serve as a deterrent to the use of deadly force upon the most vulnerable members of our society" and to "assure that perpetrators of such crimes will face the most severe punishment available under the law." *Id.* There is no indication in the text of I.C. § 18–4003(d), or the statement of legislative purpose underlying its amendment in 1991, that the legislature intended to alter the general intent necessary for a conviction of aggravated battery on a child under twelve years of age by its inclusion of such a provision in the felony murder rule in Idaho. Therefore, we hold that, in order to permit a conviction for felony murder for the aggravated battery of a child under twelve years of age, a jury need only be instructed that the state needs to prove, beyond a reasonable doubt, that the perpetrator had the general intent to commit the underlying predicate felony—aggravated battery.

In the instant case, the jury was instructed in the following manner. Instruction 14 stated:

In order for the defendant to be guilty of First Degree Murder, the state must prove each of the following:

1. On or about August 16, 1995,
2. in the state of Idaho

3. the defendant Douglas Clyde Carlson *committed an aggravated battery on . . . a child under the age of twelve (12) years of age,*

4. which caused the death . . . , and

5. the defendant acted without justification or excuse.

If you find that the state has failed to prove any of the above, then you must find the defendant not guilty of First Degree murder. If you find that all of the above have been proven beyond a reasonable doubt then you must find the defendant guilty of First Degree Murder.

(Emphasis added.). Instruction 16 stated:

A person commits *aggravated battery who, in committing battery, causes great bodily harm,* permanent disability, or permanent disfigurement.

(Emphasis added.). Instruction 17 stated:

A *"battery" is committed* when a person:

(1) *willful and unlawfully uses force or violence upon the person of another;* or

(2) actually, intentionally and unlawfully touches or strikes another person against the will of the other; or

(3) unlawfully and intentionally causes bodily harm to an individual.

(Emphasis added.). Finally, instruction 18 stated:

An act is "wilful" or done "wilfully" when done on purpose. *One can act wilfully without intending to violate the law, to injure another, or to acquire any advantage.*

(Emphasis added.).

The jury was properly instructed regarding felony murder and that the state needed to prove each of the elements of felony murder beyond a reasonable doubt. The jury was further instructed regarding the elements of the predicate felony of aggravated battery. Additionally, the jury was instructed regarding the elements of battery by the willful and unlawful use of force or violence. Finally, the jury was instructed regarding the definition of the term "willful," as used in I.C. § 18–903(a). Thus, we find no error in the district court's instructions to the jury.

## 2. Due process

Carlson argues, however, that permitting the state to utilize a general intent crime as the predicate for felony murder would be violative of due process and cites *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). However, Carlson's reliance on these cases is misplaced as neither stands for the proposition that a conviction for felony murder cannot be predicated on a general intent crime.

The requirement of the state to prove the *mens rea* element of a crime beyond a reasonable doubt is grounded in the constitutional guarantee of due process. *State v. McDougall,* 113 Idaho 900, 902, 749 P.2d 1025, 1027 (Ct.App.1988). The felony murder rule does not include any element of intent to kill or injure the victim. A defendant who participates in a predicate felony can be held liable for the death of any person killed during the commission of the felony, regardless of the individual defendant's intent that a death occur. *State v. Windsor,* 110 Idaho 410, 419, 716 P.2d 1182, 1191 (1985). Therefore, so long as the state is required to, and does, prove beyond a reasonable doubt that the defendant had the general intent to commit the aggravated battery that resulted in the death of a child under twelve years of age, due process is satisfied.

Carlson relies on *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1986) in support of his argument. In *Scroggins,* the defendant was found guilty of attempted rape and aiding and abetting the commission of felony murder—the predicate felony being *attempted* rape. *Id.* at 382, 716 P.2d at 1154. To be found guilty of any attempt to commit a crime, "the state bears the burden of proving that the defendant *intended* to commit the crime." *State v. Pratt,* 125 Idaho 546, 558, 873 P.2d 800, 812 (1993). Thus, all *attempts* are specific intent crimes. Specific intent is a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the

completed crime. *State v.. Lopez*, 126 Idaho 831, 833–34, 892 P.2d 898, 900–01 (Ct.App. 1995). *See also* WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 3.5(e) (1986). As we have held above, battery and aggravated battery are general intent crimes. Therefore, the instant case is factually distinguishable from *Scroggins*. Accordingly, Carlson's reliance thereon is misplaced. Based on the foregoing, we hold that the state's use of a general intent crime—aggravated battery of a child under twelve years of age—as a predicate for first degree felony murder does not violate due process.

### 3. Lesser included offense

 Carlson also appears to argue that the trial court should have instructed the jury on the lesser included offense of manslaughter. The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993). One may not complain of errors one has consented to or acquiesced in. *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985); *State v. Lee*, 131 Idaho 600, 605, 961 P.2d 1203, 1208 (Ct.App.1998). The invited error doctrine applies to jury instructions. *See State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct.App.1996). When instructing a jury, the purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting a trial court to give or not give an instruction from later challenging that decision on appeal. *State v. Blake*, 133 Idaho 237, 240, 985 P.2d 117, 120 (1999). Our review of the record indicates that, when

questioned by the district court regarding this matter, Carlson's trial counsel indicated that it had been discussed with Carlson and that Carlson did not want such an instruction given to the jury. Accordingly, the district court's failure to provide a manslaughter instruction to the jury, if error, was invited.

## III.

## CONCLUSION

Upon viewing the evidence presented at trial in the light most favorable to the state, we hold that, a reasonable mind could conclude that Carlson was guilty beyond a reasonable doubt of each material element of felony murder by committing an aggravated battery on a child under twelve years of age resulting in that child's death. Accordingly, the district court's denial of Carlson's motion for a judgment of acquittal was proper. Additionally, we hold that the district court did not abuse its discretion when it denied Carlson's motion for a new trial. Finally, we hold that the jury was properly instructed regarding the general intent *mens rea* of felony murder by commission of an aggravated battery on a child under twelve years of age. Therefore, Carlson's judgment of conviction for first degree murder is affirmed.

Judge LANSING and Judge Pro Tem. HARDING concur.