54 P.3d 460

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Leon HOWELL, Defendant–Respondent.**

No. 27036.

Court of Appeals of Idaho.

June 6, 2002.

Review Denied Sept. 24, 2002.

**818**

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Douglas D. Phelps, Coeur d'Alene, for respondent.

LANSING, J.

The State appeals from the order of the district court granting defendant Leon Howell a new trial based on the erroneous admission of hearsay evidence at the original trial. Because we conclude that most of the evidence in question was admissible and that any error was harmless, we reverse the order granting a new trial.

**I.**

### FACTS AND PROCEDURAL HISTORY

Howell was charged with two counts of lewd conduct with a minor under the age of sixteen, Idaho Code § 18–1508, and one count of attempted lewd conduct with a minor, I.C. §§ 18–1508 and –306, based on allegations by his twelve-year-old stepdaughter, B.S., that Howell had touched her breasts with his hands and mouth on two occasions and had tried on a third occasion to reach under her shirt. A jury trial was conducted at which Howell was found guilty of the two lewd conduct charges. However, after the trial, the district court granted a motion for a new trial based upon the court's conclusion that it had erroneously admitted hearsay testimony of two of the victim's friends, L.L. and K.B. The court deemed these errors to be of sufficient gravity to warrant a new trial.

The trial evidence, insofar as it is pertinent to the grounds for the new trial order, was as follows. In its case-in-chief, the State presented the testimony of B.S. and her friend, K.B. B.S. was living with her ex-stepfather, Howell, during the summer of 1998 in order to take care of her two younger half-brothers, Howell's children, when the abuse occurred. B.S. testified that after the first or second incident of abuse, she had told a friend, C.K., about it. When she later told another friend, L.L., about the molestations, L.L. decided on her own initiative to notify the police. When the police arrived, B.S. told them about the abuse. B.S. also testified that one day after talking to the police, she told a third friend, K.B., about the incidents.

K.B. testified, over objection, that B.S. had told her of the abuse the day after it was reported to the police. K.B. testified that B.S. said that Howell had put his hands up her shirt and kissed her body three or four times. She also testified that B.S. was crying and emotionally upset during the conversation because she did not like talking about these events.

Howell's defense was based on a theory that B.S. had invented her story because she was angry with him for not allowing her to attend an overnight party at L.L.'s house and for making a disparaging remark about her mother. Howell testified that he had experienced problems with B.S. because she had

invited large groups of friends to his home for parties while he was out and generally ignored her brothers. He also testified that he and B.S. had argued over whether B.S. would have to return to live with her father in the fall. According to Howell, B.S. did not want to return because she did not get along with her stepmother. Howell testified that the report to police was made the night before B.S. was to return. That evening B.S. telephoned to say that she was going to a party at L.L.'s home and wanted to spend the night there. Howell testified that he refused permission after learning that there were no adults present. According to Howell, L.L. then came on the telephone to try and convince him to give his permission. Howell testified that L.L. said she would get permission from B.S.'s mother. Howell told L.L. that she would not be able to contact B.S.'s mother because she was a tramp who would be out on the town on a Friday night. The defense argued to the jury that it was B.S.'s anger over these remarks and over Howell's refusal of permission for her to stay overnight with L.L. that motivated B.S. to fabricate a story about Howell molesting her.

In its rebuttal case, the State called L.L. and C.K. to testify. L.L. rebutted Howell's claim about the party. She testified that there was no party, that only she and B.S. were there. Over Howell's objection, L.L. also testified that B.S. told her of the abuse, but L.L. did not say whether this occurred before or after the telephone conversation in which Howell denied permission for B.S. to stay overnight and thereby allegedly created B.S.'s motive to fabricate the charges. L.L. also said that it was she, not B.S., who called the police to report the molestations. C.K. testified, also over objection, that B.S. had told her of the abuse about a week before B.S. told L.L. or the police.

The jury found Howell guilty of both counts of lewd conduct but acquitted him of attempted lewd conduct. Howell subsequently moved for a new trial on the basis of newly discovered evidence. Howell presented a witness who said he had overheard L.L. say that she had lied in court to help B.S. send Howell to prison. At the hearing on this motion, the district court, *sua sponte,*

raised questions as to whether evidence of B.S.'s disclosures to C.K, L.L., and K.B. should have been excluded as hearsay. The court asked the parties to brief that issue. Howell later filed an amended motion raising the erroneous admission of this testimony as an additional basis for his request for a new trial. The district court concluded that C.K.'s testimony was correctly admitted under Idaho Rule of Evidence 801(d)(1)(B) as a prior consistent statement offered to rebut an allegation of recent fabrication, but that testimony about B.S.'s disclosures to L.L. and K.B. should have been excluded. The court reasoned that B.S.'s statements to L.L. and K.B. were made after B.S.'s alleged motive to fabricate had arisen—i.e., after the alleged telephone argument between Howell and B.S.—and therefore did not come within the bounds of Rule 801(d)(1)(B). After considering the significance of L.L.'s and K.B.'s testimony, the district court decided that a new trial was required. The State appeals from that order.

## II.

### ANALYSIS

■ A motion for new trial is governed by I.C. § 19–2406 and Idaho Criminal Rule 34. The available grounds for a new trial are set out in I.C. § 19–2406, and include "when the court . . . has erred in the decision of any question of law arising during the course of the trial." I.C. § 19–2406(5). Rule 34 states that a defendant's motion for a new trial may be granted "if required in the interest of justice." Rule 34 does not create additional grounds for granting a new trial but, rather, provides the standard for determining whether a new trial should be granted when one or more of the statutory bases are present. *State v. Cantu,* 129 Idaho 673, 675, 931 P.2d 1191, 1193 (1997); *State v. Davis,* 127 Idaho 62, 65, 896 P.2d 970, 973 (1995); *State v. Carlson,* 134 Idaho 389, 397, 3 P.3d 67, 75 (Ct.App.2000).

The Idaho appellate courts have long stated that a trial court's ruling on a motion for a new trial is reviewed for an abuse of discretion. *Cantu,* 129 Idaho at 674, 931 P.2d at 1192; *State v. Lankford,* 116 Idaho 860, 873,

781 P.2d 197, 210 (1989); *State v. Scroggins,* 110 Idaho 380, 384, 716 P.2d 1152, 1156 (1985); *Carlson,* 134 Idaho at 396, 3 P.3d at 74; *State v. Miller,* 131 Idaho 288, 292, 955 P.2d 603, 607 (Ct.App.1997). The State argues that this "abuse of discretion" standard for review of new trial orders should be deemed equivalent to the "harmless error" standard applied in appeals directly challenging trial error. The inquiry on appeal from a new trial order thus would be whether there was error in the trial and, if so, whether the error was harmless. According to the State: "[I]f the Court on appeal determines that reversible error occurred in the trial, it is an abuse of discretion to have denied a new trial. On the other hand, if no reversible error occurred in the trial, the district court would abuse its discretion by ordering a new trial."

■ We note that in describing the standard of review for orders on new trial motions, the Idaho Supreme Court has stated that "[t]he trial judge does not abuse his or her discretion unless a new trial is granted for a reason that is not delineated in the code or unless the decision to grant or deny a new trial is manifestly contrary to the interest of justice." *Davis,* 127 Idaho at 65, 896 P.2d at 973 (quoting *State v. Lankford,* 116 Idaho 860, 873, 781 P.2d 197, 210 (1989)). This language suggests that the Supreme Court intended a broader deference to trial court discretion on a motion for a new trial than is contemplated by the "reversible error" standard. However, in at least one case reviewing the denial of a new trial motion predicated upon an evidentiary ruling, *State v. Roberts,* 129 Idaho 194, 923 P.2d 439 (1996), the Supreme Court conducted its review in a manner much like that advocated by the State. In *Roberts,* the Supreme Court reiterated the longstanding standard of review, that the trial court's exercise of discretion in granting or denying a new trial would not be disturbed on appeal "absent an abuse of that discretion," *Id.* at 197, 923 P.2d at 442, but after finding that trial error had occurred, the Court went on to state that, "we must decide whether the [trial] court's incorrect evidentiary ruling ... constituted harmless or reversible error." *Id.* at 198, 923 P.2d at 443. The Court then determined

that there was no reasonable possibility that the trial court's error in excluding defense evidence had contributed to the conviction and that the trial court therefore had not erred in denying the motion for a new trial that was predicated upon the evidentiary error. *See also State v. Ramos,* 119 Idaho 568, 569–70, 808 P.2d 1313, 1314–15 (1991) (affirming denial of motion for new trial based on court's refusal to excuse a juror for cause because the error, if any, was harmless). Accordingly, we will follow the analytical model of *Roberts,* determining first whether the evidentiary rulings in question were erroneous and, if so, whether that error was harmless. A trial error will be deemed harmless if the appellate court can conclude, beyond a reasonable doubt, that the jury's verdict would have been the same absent the error. *State v. Moore,* 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *Giles v. State,* 125 Idaho 921, 925, 877 P.2d 365, 369 (1994).

The testimony of L.L. and K.B., repeating what B.S. had told them, presented B.S.'s out-of-court statements to the jury, and is therefore subject to scrutiny under the hearsay rule. The district court apparently admitted the testimony at trial on the perception that it fell within I.R.E. 801(d)(1)(B). In considering the new trial motion, the district court concluded that the evidence was improperly admitted because that evidentiary rule permits the use of a prior consistent statement to rebut a claim of recent fabrication only if the statement preceded the alleged motive to fabricate. The State has explicitly declined to challenge this aspect of the trial court's ruling, and for purposes of this appeal we will assume the validity of this interpretation of Rule 801(d)(1)(B). Under the rule as thus interpreted, B.S.'s out-of-court statements to L.L. and K.B. were not made admissible by I.R.E. 801(d)(1)(B).

■ We conclude, however, that K.B.'s testimony was admissible on a different basis, for the purpose of rehabilitating B.S. as a witness. In her direct testimony, B.S. testified without objection that she had told L.L., C.K., and K.B. about the abuse. To impeach B.S., on cross-examination Howell's attorney confronted her with her testimony from the

preliminary hearing where she had testified that L.L. was the only friend to whom she had confided about Howell's molestations. The State then called K.B., who rehabilitated B.S. by verifying B.S.'s testimony that B.S. had told K.B. about the abuse the day after it was reported to the police. Out-of-court statements are hearsay only when offered "to prove the truth of the matter asserted." I.R.E. 801(c). K.B.'s testimony was admissible for a non-hearsay purpose, to rehabilitate B.S. after she was impeached. *State v. Martinez,* 128 Idaho 104, 109, 910 P.2d 776, 781 (Ct.App.1995). Therefore, the admission of K.B.'s testimony was not error and cannot serve as the basis for allowance of a new trial.

 This leaves, as the only incorrectly admitted evidence, L.L.'s testimony about what B.S. told her of the molestations. This, however, was only a portion of L.L.'s testimony. Significantly for purposes of this appeal, L.L. also testified that it was she, not B.S., who telephoned the police to report Howell's offenses. The admissibility of this part of L.L.'s testimony is not challenged; it corroborated B.S.'s testimony that she was not the one who chose to contact the police, and it bears some probative value to counter the defense assertion that B.S. fabricated her allegations because she wanted to get Howell in trouble. Consequently, even if the trial court had excluded L.L.'s testimony concerning what B.S. said about Howell's conduct, from L.L.'s act of calling the police it would have been implicit that B.S. had told L.L. *something* that L.L. thought appropriate to report to law enforcement. In addition, before L.L. was called as a witness, B.S. had already testified without objection that she told L.L. about the molestations on the night that the police were called. Therefore, the introduction of L.L.'s inadmissible hearsay testimony added little to the other trial evidence that was either admissible or presented without objection.

When the district court rendered its decision on the new trial motion, the court believed the error at Howell's trial to be more extensive than we have determined it to be. The district court had incorrectly determined that K.B.'s testimony was inadmissible and,

we conclude, ascribed greater significance than appropriate to the inadmissible portion of L.L.'s testimony. The erroneous admission of L.L.'s testimony about the abuse described by B.S. was cumulative and added only minimally to the information properly before the jury. Therefore, we are confident beyond a reasonable doubt that, had this evidentiary error not occurred, the verdict would have been the same. As the State has argued, the interest of justice would not be served by granting a new trial to remedy this harmless error.

Accordingly, the order of the district court granting a new trial is reversed.

Chief Judge PERRY and Judge GUTIERREZ, concur.