63 P.3d 490

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Thomas Robert HENRY, Defendant–Appellant.**

No. 27660.

Court of Appeals of Idaho.

Jan. 29, 2003.

William E. Little, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

GUTIERREZ, Judge.

Thomas Robert Henry, an attorney, was convicted of trafficking in methamphetamine subsequent to a sting operation in which he met with a client, who was accompanied by an undercover sheriff's detective, and in which the detective offered and Henry took a thirty-gram packet of methamphetamine as payment for the client's legal services. We affirm.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

After his arrest on drug charges, Tim Stewart told the police that he had used cocaine and methamphetamine to pay for Henry's legal services, and the police recruit-

ed Stewart to carry out an undercover drug investigation of Henry.

On June 14, 2000, Stewart placed a recorded telephone call to Henry, indicating that he wanted to make some payment to Henry for his legal services before leaving town. Stewart told Henry that he would give him one OZ [1] that night to be followed with cash at a later time. Henry agreed to meet Stewart later that night.

At about 10:30 p.m., Detective A drove Stewart in a van to the parking lot of a restaurant in Eagle, Idaho. Henry approached the van and talked with Stewart and Detective A, who portrayed herself as Stewart's friend. After some discussion of Stewart's child custody and addiction problems, Henry asked, "Do you have anything for me?"

Detective A responded, "Yes, the stuff," and instructed Henry, "Stand right there." After looking behind him, Henry turned back to the window and asked, "What's this?" Detective A replied, "Some payment. An OZ. Put it on his account. OK?"

Henry responded, "Cash pays my bills," but then stated that his brother had a brain tumor and that Henry would give "it" to him "because I don't do the stuff." Stewart advised Henry that he would pay the rest owed to Henry at a later time.

Henry leaned in toward the vehicle window, took a clear plastic package containing a white powdery substance from Detective A's open hand, looked around again, and then leaned back, putting his hand into his pocket. Henry later said that, at the time, he thought the "stuff" "might be cocaine."

Police officers arrested Henry as he drove away, finding the plastic bag containing 30.34 grams of methamphetamine in his vehicle's floorboard behind the driver's seat. After informing Henry of his *Miranda*[2] rights, the arresting officers asked him why he would accept methamphetamine as payment for his

legal services. Henry stated that he had been stupid and had wanted to get some kind of payment from Stewart, who had paid him nothing to date. Henry denied ever having sold drugs, but admitted to having purchased 1/8th ounce of cocaine for $100–$125 from a former client, Y.C., about one year prior to the instant arrest. A detective testified at trial as to Henry's stated belief that the substance he had taken from Detective A was either cocaine or methamphetamine.

The state charged Henry by information with trafficking in methamphetamine or amphetamine, I.C. § 37–2732B(a)(4). At the May 2001 trial, the district court agreed to give a jury instruction on entrapment, but refused Henry's requested version. During deliberations, the jury asked the court to clarify the knowledge element of the trafficking charge and the elements of entrapment. The court supplied responses, and the jury subsequently found Henry guilty of trafficking.

Henry then filed a motion for judgment of acquittal under Idaho Criminal Rule 29(c). After hearing argument, the district court denied his motion on the ground that, because cocaine is, like methamphetamine, a Schedule II controlled substance and because Henry knew or believed that he possessed cocaine, substantial evidence allowed the jury properly to infer that Henry knew that he possessed methamphetamine.

The district court entered judgment against Henry and imposed a unified sentence of five years, with two years determinate. Henry timely appeals.

## II.

## ANALYSIS

Henry raises a number of issues on appeal, and we herein consider the entrapment instruction and his denied motion for judgment of acquittal.[3]

---

1. An OZ (pronounce "oh-zee") is a street idiom for a one-ounce quantity of any illicit drug.

2. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Henry also claims that he suffered judicial bias, but concedes that the record supplies nothing by which to review this claim on appeal. He also states that the district court failed to consider an objective theory of entrapment, and also "sentencing entrapment" whereby the police targeted him with a specific quantity of drugs so as to

## A. Entrapment

■ Henry argues that Instruction 19 does not adequately reflect the law. Specifically, he challenges the description in Paragraph 3 of Instruction 19 of the predisposition element of entrapment that he "was not ready and willing to commit the crime before the law enforcement officials spoke" with him. Henry argues that, where he was entrapped by Detective A's physical placement of the methamphetamine in his possession and not by her words, the word "spoke," which the jury must interpret literally, improperly relieved the state of its burden to prove his predisposition. Henry's argument suggests that the court should have included his requested language to show his readiness and willingness before the officers "spoke or interacted" with him.

■ Whether the jury has been instructed properly is a question of law over which we exercise free review. *State v. Canelo,* 129 Idaho 386, 391, 924 P.2d 1230, 1235 (Ct.App.1996). In determining whether the trial court should have given a requested jury instruction, we must examine whether, based upon the facts of the case, the given instructions, as a whole, fairly and accurately reflect the applicable law. *Id.* To constitute error entitling a defendant to relief, an instruction must mislead the jury or prejudice the defendant. *State v. Hanson,* 130 Idaho 842, 844, 949 P.2d 590, 592 (Ct.App.1997).

■ Idaho Code § 19–2132 requires that the trial court must give to the jury "all matters of law necessary for their information." I.C. § 19–2132(a). Furthermore, a requested instruction must be given where: (1) it properly states the governing law; (2) a reasonable view of at least some evidence would support the defendant's legal theory; (3) the subject of the requested instruction is not addressed adequately by other jury instructions; and (4) the requested instruction does not constitute an impermissible com-

charge him with a more serious trafficking offense. Henry did not raise these issues before the district court and thus failed to preserve these issues for appeal. Absent fundamental error, this Court will not address an issue not preserved for appeal. *See State v. Rozajewski,* 130 Idaho 644, 645, 945 P.2d 1390. 130 Idaho

ment as to the evidence. *State v. Fetterly,* 126 Idaho 475, 476–77, 886 P.2d 780, 781–82 (Ct.App.1994); *State v. Kodesh,* 122 Idaho 756, 758, 838 P.2d 885, 887 (Ct.App.1992).

■ Henry's entrapment instruction argument fails. First, Instruction 19 conforms almost identically to pattern Idaho Criminal Jury Instruction 1513, thus properly stating the governing law. The court also tailored I.C.J.I 1513 to reflect Stewart's role in the undercover operation and other facts. Second, and contrary to Henry's argument that Instruction 9 admonished the jury to interpret the word "spoke" literally, we note that Instruction 19 also called upon the jury to determine whether Henry was predisposed to commit the charged offense "without the actions" of the state or its agent. In addition, the district court gave Instruction 23, which stated, in pertinent part, "Whether some of the instructions apply will depend upon your determination of the facts. You will disregard any instruction which applies to a state of facts which you determine does not exist." Thus, construed as a whole, the instructions did not foreclose the jury from considering whether and how the word "spoke" applied to the evidence placed before it. Third, we are constrained to interpret a jury instruction with careful attention to the language used and as reasonable jurors would have interpreted it. *State v. Gilman,* 105 Idaho 891, 896, 673 P.2d 1085, 1090 (Ct.App.1983). Instructions are intended for jurors, and not for judges or lawyers. Unless otherwise defined, terms contained in jury instructions must be given their plain, nontechnical meanings. *Id.* Thus, even if the facts had not established that Henry first spoke with a state agent when he conversed with Stewart by telephone and later when he spoke with Detective A, the jury reasonably would have interpreted the word "spoke," together with the word "actions," to consider forms of interaction necessarily broader than verbal communication. Accordingly, we con-

644, 945 P.2d 1390, 1391 (Ct.App.1997). Finally, he argues that the court's response to the jury's questions about entrapment misled or misinformed the jury, a position without merit where the court merely advised the jury to reread Instructions 4 and 19.

clude that Instruction 19 did not mislead the jury or prejudice Henry. Thus, we hold that the district court did not err in giving that instruction.

## B. Judgment of Acquittal

■ Henry argues that the district court erred in denying his Rule 29(c) motion for judgment of acquittal in which he asserted that the evidence was insufficient to establish that he knew the substance given to him by Detective A was methamphetamine, that he willingly possessed that drug, and that he knew that the quantity of the methamphetamine was at least twenty-eight grams.

■ We independently review the evidence to determine whether a reasonable mind could conclude that the defendant's guilt on every material element of the offense of which he stands convicted has been proven beyond a reasonable doubt by substantial and competent evidence. *State v. Kopsa,* 126 Idaho 512, 521, 887 P.2d 57, 66 (Ct.App.1994); *State v. Mata,* 107 Idaho 863, 866, 693 P.2d 1065, 1068 (Ct.App.1984). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *State v. Carlson,* 134 Idaho 389, 395, 3 P.3d 67, 73 (Ct.App.2000). Moreover, where the defendant stands convicted, we view all reasonable inferences in the state's favor. *Mata,* 107 Idaho at 866, 693 P.2d at 1068.

■ Where the language of a statute is plain and unambiguous, we must give effect to the statute, as written, without engaging in statutory construction. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999). As relevant in Henry's case, trafficking under I.C. § 37–2732B(a)(4) is established where:

> Any person ... is knowingly in actual or constructive possession of[ ] twenty-eight (28) grams or more of methamphetamine or amphetamine or of any mixture or substance containing a detectable amount of methamphetamine or amphetamine....

On its face, I.C. § 37–2732B(a)(4) establishes that the defendant must have knowl-

edge as to his actual or constructive possession of the enumerated substances. *See State v. Fox,* 124 Idaho 924, 926, 866 P.2d 181, 183 (1993).

The evidence establishes that Henry knew that he possessed methamphetamine. First, the substance that Henry took from Detective A's hand was contained in a large clear plastic cylindrically-folded packet, and Henry observed the white color and powdery texture of the packet's contents. Second, Henry stored that packet behind the driver's seat of his vehicle and thereby attempted to conceal it. Third, Henry attempted to avoid detection by twice looking around and checking for any onlookers to his actions, first upon Detective A's production of the drug packet and again just prior to reaching into the van window and taking that packet from her; and also by leaning in toward the window when taking the packet, thus trying to obscure the view of his taking possession of the packet. Fourth, Henry placed the packet on his person, drawing his hand back from the van window and placing the packet in his pocket.

Further, Henry stated that he believed that he took possession of either cocaine or methamphetamine, both being Schedule II controlled substances. His response to Detective A's offer of the drug that he didn't "do the stuff," but that he would give it to his brother who suffered from a brain tumor, supports Henry's stated belief that he took possession of an illegal drug. In addition, Stewart and Detective A told Henry that an OZ would be traded for his services. Thus, in acting out his intention to possess the drug, Henry did not discriminate between the Schedule II controlled substances of cocaine and methamphetamine. In short, either drug would have sufficed. Thus, it is reasonable to infer that Henry knew that he possessed methamphetamine. According to our standard of review, we view all reasonable inferences in the state's favor. Moreover, we do not substitute our view for that of the jury as to the weight it assigned to the evidence that Henry was mistaken as to the drug in his possession. We, therefore, conclude that the evidence in the record and reasonable inferences therefrom sufficed to

establish Henry's knowledge of the methamphetamine in his possession under I.C. § 37–2732B(a)(4).

Finally, we need not consider whether I.C. § 37–2732B(a)(4) requires Henry to have known the quantity of drug he took from Detective A because the evidence sufficed to permit a reasonable inference that he did know that the packet contained at least twenty-eight or more grams. *Cf. State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App.2000). The transaction offered in Stewart's telephone call to Henry specifically involved an OZ, *i.e.*, one ounce, or 28.35 grams, of illegal drugs. Henry later met with Stewart pursuant to that telephone call and took the packet offered and identified expressly by Detective A as an OZ. Furthermore, the size and clear wrapping of the packet reasonably permitted Henry to observe the large quantity of the substance it contained. Again, we do not substitute our view for reasonable inferences drawn by the jury, and we view all reasonable inferences in the state's favor. Here, the evidence sufficed to permit a reasonable inference that Henry knew that he was taking at least twenty-eight grams of drug from Detective A.

Based on the foregoing, we conclude that a reasonable juror could conclude Henry's guilt beyond a reasonable doubt. Thus, the district court did not err in denying Henry's motion for judgment of acquittal.

### III.

### CONCLUSION

Because the district court did not err in instructing the jury on Henry's entrapment defense and in denying his motion for judgment of acquittal, we affirm Henry's judgment of conviction.

Judge PERRY and Judge Pro Tem JUDD Concur.