944 P.2d 721

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Danny Russell GLEASON, Defendant–Appellant.**

No. 23246.

Court of Appeals of Idaho.

Aug. 29, 1997.

---

* Justice McDevitt participated in this decision prior to his resignation.

Fredrick G. Loats, Coeur d'Alene, for Defendant–Appellant.

Alan G. Lance, Attorney General; L. La-Mont Anderson, Deputy Attorney General, Boise, for Plaintiff–Respondent.

WALTERS, Judge.

Danny Gleason appeals from the district court's memorandum opinion and order affirming his judgment of conviction entered in the magistrate division after a jury found him guilty of driving under the influence, I.C. § 18–8004. On appeal, Gleason asserts that the jury was improperly instructed, that his *Miranda* rights were violated and that the magistrate improperly assisted the prosecution. Gleason also submits that the prosecution commented on his constitutional right to remain silent and that the trial court erred in admitting scientific evidence. For the following reasons we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 1992, Officer Todd Brownlee saw a dark colored pickup drift over the fogline (the solid line on the right hand side of the road) and then veer back into its own lane. Officer Brownlee stopped the pickup and identified Danny Gleason as the driver. During the stop, Officer Brownlee tape-recorded the conversation and Gleason's abusive language. Gleason was subsequently arrested and transported to jail in the patrol car. While being transported, Officer Brownlee continued to record Gleason's words as he shouted and yelled abusive profanity. Once at the jail, Gleason was offered an evidentiary test on the Intoximeter 3000 to determine his blood-alcohol content (BAC). That test produced BAC results of .23 and .24.

Gleason was charged with misdemeanor driving under the influence pursuant to I.C. § 18–8004. He subsequently filed motions to suppress, claiming the initial traffic stop was invalid and that he did not knowingly, intelligently and voluntarily waive the rights protected under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After the magistrate court denied both motions, Gleason entered a conditional guilty plea, reserving his right to appeal the magistrate's order denying his suppression motions. The district court affirmed the denial of the motion to suppress the evidence concerning the initial traffic stop, but reversed the denial of the motion with regard to the waiver of Gleason's *Miranda* rights. Gleason appealed from the district court's order concerning the validity of the initial traffic stop, and in an unpublished opinion this Court affirmed. *State v. Gleason,* # 20545 (Ct.App.8/1/94, unpublished).

After the district court reversed the magistrate's decision regarding the waiver of Gleason's *Miranda* rights, Gleason was permitted to withdraw his guilty plea. Subsequently, a jury found Gleason guilty of driving under the influence of alcohol and the magistrate entered a judgment of conviction. Gleason appealed to the district court, which affirmed the judgment of conviction.

## II.  ISSUES ON APPEAL

On further appeal to this Court, Gleason asserts that: (1) the magistrate erred in giving a jury instruction that defined reasonable doubt, in part, as "the kind of doubt that would make an ordinary person hesitant to act in the most important affairs of his or her own life;" (2) his post-arrest statements were inadmissable because he was not advised of *Miranda* rights; (3) the magistrate erred in assisting the prosecution by directing the prosecutor's attention to the location of certain documents which were necessary to lay the foundation for admission of the BAC test results; (4) the questioning of the arresting officer about an exhibit identified as "Miranda Rights," constituted a comment on Gleason's right against self-incrimination; and (5) the trial court erred in admitting scientific tests.

## III.  DISCUSSION

### A.  Reasonable Doubt Instruction

Gleason argues that the magistrate's instruction to the jury regarding reasonable doubt raised an impermissibly high burden for acquittal.  The specific instruction at issue defined reasonable doubt as "a kind of doubt which would make an ordinary person hesitant to act in the most important affairs of his or her own life."  This instruction was modeled after Idaho Criminal Jury Instruction (I.C.J.I.) 103A, which indicates in the comment that describing a reasonable doubt as the kind which would make an ordinary person hesitant to act in the most important affairs of his or her own life was approved by the Supreme Court in *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), and by the Idaho Supreme Court in *State v. Taylor*, 76 Idaho 358, 362, 283 P.2d 582, 585 (1955).

Idaho Criminal Jury Instruction 103 sets forth the California jury instruction previously adopted by the Idaho Supreme Court as the appropriate instruction on reasonable doubt.  *See State v. Rhoades*, 121 Idaho 63, 82, 822 P.2d 960, 979 (1991); *State v. Cotton*, 100 Idaho 573, 577, 602 P.2d 71, 75 (1979); *State v. Holm*, 93 Idaho 904, 908, 478 P.2d 284, 288 (1970).  However, I.C.J.I. 103A is an alternative, proposed by the committee that developed the pattern criminal instructions.  Our review is limited to whether the instruction that was given to the jury misstated the law or was so confusing and argumentative as to mislead the jury.  *State v. Rhoades*, 121 Idaho at 82, 822 P.2d at 979.  The Constitution does not dictate that any particular form of words be used in advising the jury of the State's burden of proof, so long as "taken as a whole, the instructions correctly convey[y] the concept of reasonable doubt."  *Holland v. United States*, 348 U.S. at 140, 75 S.Ct. at 138.

Whether the jury instruction given regarding reasonable doubt is proper is a question of law over which the appellate court exercises free review.  *State v. Roll*, 118 Idaho 936, 938, 801 P.2d 1287, 1289 (Ct. App.1990).  When reviewing jury instructions, we first ask whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law.  *State v. Enno*, 119 Idaho 392, 405, 807, P.2d 610, 623 (1991); *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993).  To be considered reversible error, an instruction must have misled the jury or prejudiced the complaining party.  *Salinas v. Vierstra*, 107 Idaho 984, 991, 695 P.2d 369, 376 (1985).

Gleason cites *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), as support for the proposition that the magistrate overstated the reasonable doubt necessary for acquittal.[1]  In *Cage*, the Court held

---

1. In *Cage*, the reasonable doubt instruction provided:

   If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty.  Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the

accused.  This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture.  *It must be such doubt as would give rise to a grave uncertainty*, raised in your minds by reason of unsatisfactory character of the evidence or lack thereof.  A reasonable doubt is not a mere possible doubt.  *It is an actual substantial doubt*.  It is a doubt that a

that the terms "grave uncertainty" and "actual substantial doubt" suggested a higher degree of doubt than is necessary. *Cage v. Louisiana*, 498 U.S. at 40, 111 S.Ct. at 329. In construing the instruction, the Court stated that the words "substantial" and "grave," coupled with "moral certainty" rather than evidentiary uncertainty could cause a reasonable juror to make a finding of guilt based upon a higher degree of doubt than is necessary. *Id.* After reviewing the instruction as a whole, the Court struck down the reasonable doubt instruction based on the combination of the three terms.

The instruction given in present case is unlike the instruction given in *Cage*. Here, the instruction at issue does not use the terms "grave uncertainty," "actual substantial doubt" or "moral certainty." To that extent, *Cage* is not applicable. Nevertheless, Gleason asserts that the terms "doubt which would make an ordinary person hesitant to act" and "in the most important affairs of his or her own life" create a higher doubt than is necessary.

In *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Supreme Court approved language which defined reasonable doubt as "that which would cause a reasonable person to hesitate to act." This language is similar to the first part of the instruction at issue here. The Court stated that the "hesitate to act" standard gives a common-sense benchmark for just how substantial such doubt must be, and that this formulation has been repeatedly approved. *Victor*, 511 U.S. at 20, 114 S.Ct. at 1250. In addition, in *Taylor*, the Idaho Supreme Court approved a reasonable doubt instruction referring to "the important affairs of life," similar to the second part of the instruction under review here. *Taylor*, 76 Idaho at 362, 283 P.2d at 585. The instruction in *Taylor* contained the phrase, "a doubt which would cause you to hesitate in the *ordinary affairs* of life." *Id.* The Idaho Court held that "ordinary affairs of life" was improper, but that "important affairs of life" had been long approved by the Court, *citing State v. Nolan*, 31 Idaho 71, 169 P. 295

(1917). *See also State v. Moon*, 20 Idaho 202, 117 P. 757 (1911) *and State v. Lyons*, 7 Idaho 530, 64 P. 236 (1901).

■ In the present case, we conclude, after reviewing the instruction as a whole, that the reasonable doubt instruction does not suggest a higher degree of doubt than is necessary for acquittal. The doubt which would make an ordinary person hesitant to act in the important affairs of life does not create a higher degree of doubt than is necessary. Consequently, we find no error with respect to the instruction given.

**B. Suppression of Gleason's Post–Arrest Statements**

Prior to Gleason's trial, an order was entered suppressing statements he had made in response to questioning by Officer Brownlee, on the ground that Gleason had not been advised of his *Miranda* rights before the interrogation. Now, Gleason contends that the post-arrest statements he spontaneously made while seated in the patrol car, which statements were not responsive to any questions, also were obtained in violation of his *Miranda* rights because he was not advised of his right to remain silent at the commencement of his detention and before he spoke. The magistrate refused to suppress Gleason's spontaneous remarks, finding that Gleason was not subjected to any custodial interrogation when he made the post-arrest statements in question.

■ Upon considering the arguments presented on appeal, we conclude that resolution of this issue is governed by I.C.R. 12. Idaho Criminal Rule 12(b) provides that motions to suppress evidence on the ground that it was illegally obtained must be raised prior to trial. *State v. Collinsworth*, 96 Idaho 910, 912, 539 P.2d 263, 265 (1975). Such motions must be filed within twenty-eight days after the entry of a plea of not guilty or seven days before trial whichever is earlier. I.C.R. 12(d). Failure by the defendant to file the motion prior to trial, or at the time set by I.C.R. 12(d), shall constitute a waiver of the relief sought by the motion. I.C.R. 12(f).

---

reasonable man can seriously entertain. What is required is not an absolute or mathematical cer-

tainty, but a *moral certainty*. *State v. Cage*, 554 So.2d 39, 41 (La.1989) (emphasis added).

■ In the present case, Gleason first asserted on the day of the trial that his post-arrest statements should be suppressed because he was not immediately advised of his *Miranda* rights when he was arrested. The prosecution objected to the motion, asserting that the motion was untimely. Although Gleason acknowledged his motion was untimely and offered no reason or excuse for his untimeliness, the magistrate considered the motion and concluded that any statements that were not the result of questioning were admissible. However, I.C.R. 12(d) clearly requires either good cause or excusable neglect to be shown by a party who has missed the prescribed deadlines. *State v. Dice*, 126 Idaho 595, 597, 887 P.2d 1102, 1104 (Ct.App.1994). Gleason has not presented any good cause or excusable neglect for failing to complying with the deadlines. Therefore, because Gleason did not comply with I.C.R. 12 we will not disturb the trial court's denial of the suppression motion. *State v. Dice, supra.*

## C. Trial Court's Assistance

Gleason here asserts that trial court improperly assisted the prosecution when an original of the Intoximeter 3000 report was located in the court file. The circumstances of this claim are as follows.

During the trial, it developed that the prosecution did not have the original result of the BAC tests from the Intoximeter 3000, and Gleason objected to the use of a photocopy. Counsel for Gleason asked Officer Brownlee where the originals were. In response, Officer Brownlee stated that there were three originals, one filed with the court, one with the prosecution, and one in the Idaho State Police records. Gleason's counsel then stated that because no originals existed and Officer Brownlee did not have sufficient independent recollection of the results of the test which had occurred three and half years previously, then the Intoximeter 3000 test should not be admitted. The magistrate responded by stating:

THE COURT: Well, there was testimony from the officer that one of the copies would be filed with the court. And, if the parties wish to look at the Court's file they can see if there's an original.

[DEFENSE COUNSEL]: Well, I object to the court assisting the prosecution in this case by making that suggestion.

THE COURT: Well, you're the one that just made the objection. You can look at it if you want, I said the parties.

■ Gleason asserts that these remarks prejudiced him in that the magistrate's comments allowed the prosecution to lay the proper foundation to admit the Intoximeter 3000 test. However, we conclude that the magistrate's explanation that an original may exist in the court's file did not prejudice Gleason. Any explanation of a trial judge's ruling is likely to inform an advocate of what steps must be taken to remedy shortcomings in foundational evidence. *State v. Greathouse*, 119 Idaho 732, 736, 810 P.2d 266, 270 (Ct.App.1991). Such a coincidental effect does not demonstrate that the comments are prejudicial. *Id.*

Here, Gleason contended that no originals existed. The magistrate informed both parties that original results to the Intoximeter 3000 test may be in the court's file. Whether the original would indeed be found in the file appears to have been unknown to the magistrate and a review of the file could have benefited either party. The magistrate's impartial comments explaining that there may be an original only assisted in the court's difficult task of ensuring that the trial run fairly and expeditiously. Therefore, we conclude that there was no error in the magistrate's comments and remarks.

## D. Miranda Card Questioning

Gleason next argues that the prosecution's question regarding the identity of the *Miranda* card constituted an impermissible comment on his right against self-incrimination. During the course of trial, Officer Brownlee was asked to identify a document. Officer Brownlee responded "It's our Idaho State Police Miranda rights." Brownlee was then cut off when Gleason objected and moved for a mistrial. The prosecution subsequently withdrew the exhibit and the magistrate denied Gleason's motion for mistrial.

We conclude that there is no merit to Gleason's argument.

■ It is correct that the prosecution may not introduce evidence of Gleason's post-arrest silence or comment on Gleason's right to remain silent. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). However, here, the prosecution did not introduce evidence of Gleason's post-arrest silence or comment on Gleason's right to remain silent. The question posed simply asked Officer Brownlee to identify the *Miranda* card. We conclude that the identification of this card, without more, did not violate Gleason's privilege against self-incrimination.

### E. Admission of the Intoximeter 3000 Tests

Lastly, we address Gleason's claim that the magistrate erred in admitting the Intoximeter 3000 tests based on I.C. § 18–8004. The original Intoximeter 3000 test was found in the court's file, and the prosecution sought to introduce it into evidence. The record shows that Gleason's only objection to the original Intoximeter 3000 test was based upon the chain of custody, although Gleason did assert other objections to the admission of a photocopy of the Intoximeter 3000 test. The trial court overruled the objection pursuant to I.C. § 18–8004, which provides for an expedient method for admitting BAC test results into evidence. I.C. § 18–8004(4).

■ On appeal, Gleason contends that the trial court improperly admitted the Intoximeter 3000 results because it denied his objections which were based upon hearsay, Sixth Amendment grounds and foundation. However, the record reveals that the only objection to the original Intoximeter 3000 was to the chain of custody. Foundation and hearsay objections were made and sustained earlier when the witness was asked to testify to the BAC reading from memory. It is a fundamental tenet of appellate law that a proper and timely objection must be made in the court below before an issue is preserved for appeal. The specific ground for the objection must also be clearly stated. I.R.E. 103(a)(1); *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994). Objecting to the admission of evidence on one basis does not preserve a separate and different basis for exclusion of the evidence. *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995); *State v. Higgins*, 122 Idaho 590, 596, 836 P.2d 536, 542 (1992). Furthermore, although the only objection made by Gleason was based upon chain of custody, he has not shown error or argued lack of chain of custody as an issue on appeal. *State v. Zichko*, 129 Idaho 259, 923 P.2d 966 (1996). We decline to address Gleason's hearsay, Sixth Amendment and foundation grounds, which were not asserted below with regard to the original test results.

### IV. CONCLUSION

We hold that Gleason has not established that the jury instruction regarding reasonable doubt was improper. The instructions given by the trial court when viewed as a whole, fairly and accurately reflect the applicable principles. We affirm the trial court's decision to allow the tape of Gleason's voluntary statements made while he was in the patrol car. We further hold that the trial court did not improperly assist the prosecution, nor did it err in admitting the Intoximeter 3000 test results. Finally, we conclude that the prosecutor's question regarding the *Miranda* card was not a comment on Gleason's right to remain silent. Accordingly, the judgment of conviction is affirmed.

LANSING, C.J., and PERRY, J., concur.