IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41180

| STATE OF IDAHO, | ) | 2015 Unpublished Opinion No. 308 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 14, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JORDAN D. EVERHART, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick H. Owen, District Judge.

Judgment of conviction and unified life sentence, with a minimum period of confinement of twenty years, for first degree murder, <u>affirmed</u>; order denying I.C.R. 35 motion for reduction of sentence, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred and Kimberly E. Smith, Deputy Appellate Public Defenders, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Chief Judge

Jordan D. Everhart appeals from his judgment of conviction and sentence for first degree murder. Specifically, Everhart argues that the district court erred by admitting certain audio recordings and transcripts of phone calls he made while in custody. He also asserts that the district court abused its discretion by imposing an excessive sentence and denying his I.C.R. 35 motion for a reduction of sentence. For the reasons set forth below, we affirm.

I.

FACTS AND PROCEDURE

On October 8, 2011, Everhart was watching his girlfriend's two young children, an eighteen-month-old girl and a four-year-old girl, while the mother was working. At approximately 2:35 a.m., Everhart called 911 to report that the eighteen-month-old had been

injured. He told the operator that the child had gotten out of bed during the night and been knocked over by one of the small dogs in the home, falling onto her back and striking her head on the kitchen floor.[1] He reported that the child was taking short breaths, was unconscious, and was not moving. Everhart conveyed the same account to the first responders when they arrived. In light of the circumstances, the paramedics contacted law enforcement. When police arrived at the scene, Everhart told them that he had not actually seen what happened, but heard the child fall and assumed it was caused by the dogs because they were near the child when he found her. When asked about the specifics of what happened, Everhart did not provide further details.

While on the way to the hospital, the paramedics observed multiple abrasions, bruising, and markings on the child's lower extremities. Paramedics also noticed markings in a "strap" pattern across the tops of the child's feet, which the emergency room doctor described as "very unusual." A CT scan revealed old and new bleeding in the child's brain. The scan showed that the left side of the child's brain had been compressed with a left-to-right midline shift resulting in a substantial subdural hematoma. There was also evidence of retinal hemorrhaging in a pattern inconsistent with an accidental fall and consistent with abusive head trauma. The on-call surgeon determined that the injury was consistent with an acceleration/deceleration injury resulting from striking a blunt object with great force, causing the child's brain to compress. The surgeon determined that brain surgery afforded the best possibility of saving the child's life; however, the child's prognosis for survival was "less than 5 percent." While prepping the child for surgery, the surgeon noticed a "fresh" crease-like abrasion on the left side of the child's scalp that stretched from the child's mid-cheek to the high back of her head. The surgeon also noticed bruising under the child's armpits following the operation. The surgery failed to improve the child's prognosis, and she was declared brain-dead and removed from life support a few days later. An autopsy revealed that the cause of death was malignant intracranial hypertension secondary to unexplained closed head injury resulting from nonaccidental, abusive head trauma. The death was ruled a homicide.

Everhart was arrested and initially charged with felony injury to a child, but after the child was declared brain-dead and taken off life support, the state amended the charge and a grand jury indicted Everhart for first degree murder committed in the perpetration of aggravated battery of a child under twelve years of age. I.C. §§ 18-4001, 18-4003(d), and 18-907(a). The

---

[1] Everhart later told the child's mother that he found the child lying in the living room.

state filed a motion in limine seeking a pretrial ruling on the admissibility of several exhibits of audio recordings and corresponding transcripts of calls that Everhart made from jail. Everhart objected, arguing that the exhibits were irrelevant and failed to show consciousness of guilt, as suggested by the state. Following several hearings on the matter, the district court ruled that redacted versions of some of the exhibits were admissible.

At trial, Everhart testified and told a different story of what happened on the night of the incident. He testified that the child awoke from a four-hour nap around 9:00 p.m. Everhart fed and bathed the child, and after letting her play for a while, tried to get her to go back to bed. However, the child kept getting out of bed, disturbing Everhart while he played video games. According to Everhart, he became angry, hit the child three times on the feet with a belt, and put her back to bed. He then went outside to smoke. When he came back inside, he again found the child playing with the dogs. Everhart claimed that, because the child looked scared upon being discovered, he decided to play with her by picking her up from behind and tossing her into the air. However, because she was trying to get away from him, he failed to catch her on the second toss, causing her to hit her head on the dryer before falling to the floor. He then tried to revive the limp and unresponsive child by filling their bathtub with water so that he could splash water in her face to wake her up like "people in the movies." Everhart then called the child's mother before calling 911 at her direction.

The jury found Everhart guilty of first degree murder, and the district court sentenced him to a unified term of life imprisonment, with a minimum period of confinement of twenty years. Everhart filed a Rule 35 motion for reduction of his sentence, which the district court denied. Everhart appeals.

## II.

## ANALYSIS

Everhart argues that the district court erred by admitting redacted audio recordings and corresponding transcripts of two phone calls he made while in jail. Specifically, Everhart contends that these exhibits were irrelevant. Alternatively, Everhart asserts that the district court abused its discretion by determining that the probative value of the exhibits was not substantially outweighed by the danger of unfair prejudice under I.R.E. 403. Everhart also argues that his sentence is excessive and that the district court abused its discretion in denying his Rule 35 motion for reduction of that sentence. The state responds that the challenged exhibits were

relevant, Everhart failed to preserve his Rule 403 argument, and the sentence was appropriate under the circumstances.

## A.    Admissibility of Evidence

We begin with Everhart's challenge to the admissibility of state's exhibits 53, 53-A, 55, and 55-A, which consist of redacted audio recordings and corresponding transcripts of phone calls Everhart made to his family members while in jail.[2]  On appeal, Everhart specifically challenges the following portion of exhibits 53 and 53-A:

| | |
|---|---|
| FATHER: | You didn't tell [defense counsel] you did it or anything like that, right? |
| J. EVERHART: | Yeah. |
| FATHER: | It's okay though, you know.  Hey, you know, as long as you know we still, you know--you know, sticking to your story, man, you know, you didn't do it, you know, and we're standing by you 100 percent. |
| J. EVERHART: | I know. |

Everhart also challenges the entirety of exhibits 55 and 55-A, but especially the following portion:

| | |
|---|---|
| MOTHER: | So you don't have to go admitting to anything like that.  You just didn't do it and you don't know what happened. |
| J. EVERHART: | Yeah. |
| MOTHER: | You know what I mean? |
| FATHER: | Jordan, is that what you basically told the lawyer that you didn't do anything, right? |
| J. EVERHART: | (Inaudible.) |
| FATHER: | Huh? |
| J. EVERHART: | Yeah. |
| FATHER: | Okay. |
| MOTHER: | And-- |
| FATHER: | So stick to the script, okay?  Jordan, let me just tell you this.  We as a family, we know that you didn't do this, okay?  And so we just have--and you don't have to prove that you didn't do it, Jordan.  They have to prove that you done it. |
| J. EVERHART: | Yeah. |

Everhart contends that these portions of the exhibits were improperly admitted because they were irrelevant or, even if relevant, their probative value was substantially outweighed by the

---

[2]    State's exhibits 53 and 55 are the audio recordings of the phone calls, while exhibits 53-A and 55-A are the corresponding transcripts.

danger of unfair prejudice. He also argues that the state will be unable to prove that the error in admitting the evidence was harmless beyond a reasonable doubt.

### 1. Relevance

Everhart argues that the above portions of the exhibits were not relevant because the potentially incriminating statements were made by his family members, not him. Indeed, he argues that his responses in the challenged portions consisted entirely of "yeah," "I know," and an inaudible statement, which failed to show any consciousness of guilt or otherwise make any consequential fact more or less likely.[3]

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. I.R.E. 402; *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401; *see also Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Here, the challenged exhibits tended to make it more likely that the story Everhart initially offered--certainly a fact of consequence to the determination of the action--was fabricated. Everhart does not dispute that he responded affirmatively to his family's statements regarding "sticking to [his] story" and "stick[ing] to the script" instead of asserting that his "story" was the truth and there was no "script" to follow. We acknowledge that, because Everhart's responses were limited and the statements were made by his family members, the relevance of the challenged exhibits was low. Nevertheless, the exhibits served to further the state's theory that Everhart had yet to tell what really happened the night that the child was injured and had instead been following a "script" and telling everyone a "story." Moreover,

---

[3] Everhart also argues that the state conceded below that exhibits 55 and 55-A were not relevant, stating that if another exhibit was not admitted, these exhibits may not be relevant. Relevance is a question of law subject to de novo review. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012). Thus, whether the state conceded the relevance of the exhibits it is of no import here.

following Everhart's disclosure of a different version of events at trial, the challenged exhibits became more relevant to the credibility of Everhart's new story in light of his repeated past fabrications.[4] Accordingly, the challenged exhibits were relevant and the district court did not err in so finding.

### 2. Rule 403 balancing test

Everhart alternatively argues that, even if the challenged exhibits were relevant, their probative value was substantially outweighed by the danger of unfair prejudice they created. Rule 403 provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice. A trial court's determination under Rule 403 is discretionary and, as such, will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to the party's case, as virtually all of the state's evidence in a criminal trial is presented to prove the defendant's guilt and, thus, is prejudicial to a defendant. *State v. Salazar*, 153 Idaho 24, 27, 278 P.3d 426, 429 (Ct. App. 2012); *State v. Carlson*, 134 Idaho 389, 398, 3 P.3d 67, 76 (Ct. App. 2000); *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994). Instead, the rule protects against evidence that is unfairly prejudicial, that is, evidence that tends to suggest decision on an improper basis. *State v. Pokorney*, 149 Idaho 459, 465, 235 P.3d 409, 415 (Ct. App. 2010); *Floyd*, 125 Idaho at 654, 873 P.2d at 908.

The state asserts that we should not address Everhart's Rule 403 arguments on appeal because he did not raise them below and, therefore, failed to preserve them for appeal. For an objection to be preserved for appellate review, the specific ground for the objection must be clearly stated. I.R.E. 103(a)(1); *Carlson*, 134 Idaho at 398, 3 P.3d at 76; *State v. Gleason*, 130 Idaho 586, 592, 944 P.2d 721, 727 (Ct. App. 1997). Objecting to the admission of evidence on one basis does not preserve a separate and different basis for exclusion of the evidence. *State v.*

---

[4] As noted by the state, even if the district court had initially determined during pretrial hearings that the challenged exhibits were not relevant, it could have revisited the issue in light of Everhart's testimony during trial and its impact on his credibility. *See State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010) (noting the relevance of evidence bearing on credibility); *State v. Young*, 136 Idaho 113, 120, 29 P.3d 949, 956 (2001) (stating that, because it is not a final order, a trial court may reconsider a ruling made in a pretrial motion in limine at any time).

*Higgins*, 122 Idaho 590, 596, 836 P.2d 536, 542 (1992); *Carlson*, 134 Idaho at 398, 3 P.3d at 76; *Gleason*, 130 Idaho at 592, 944 P.2d at 727.

In his response to the state's fifth pretrial motion in limine regarding the audio recordings and corresponding transcripts, and during the several hearings on that motion, Everhart failed to make any argument under Rule 403 with regard to exhibits 53, 53-A, 55, or 55-A. Instead, he challenged only their relevance. By way of comparison, Everhart did argue that the probative value of a different exhibit was outweighed by the danger of unfair prejudice, which exhibit was ultimately excluded by the district court. Thus, Everhart failed to specifically challenge the district court's Rule 403 analysis, or lack thereof, as to the exhibits at issue here.

Nevertheless, Everhart asserts that the state put the Rule 403 balancing test at issue in its fifth motion in limine. However, in its memorandum in support of the motion, the state's Rule 403 argument was explicitly contingent on Everhart's making the argument in objection. Everhart did not make such an argument as to the challenged exhibits, so he cannot claim that the Rule 403 issue was preserved for appeal through the state's election to be thorough in preemptively addressing arguments that it suspected Everhart might make.

Everhart also contends that the Rule 403 balancing test was put at issue by the district court's discussion of the Rule 403 balancing test during a hearing. *See State v. Fisher*, 123 Idaho 481, 485, 849 P.2d 942, 946 (1993) (noting that appellate courts will not review a trial court's alleged error on appeal unless the record discloses an adverse ruling which forms the basis for the assignment of error). However, the district court's discussion of Rule 403 was in reference to other exhibits, not the ones challenged here, including the single exhibit that Everhart objected to on the basis of Rule 403. Moreover, throughout each of the several hearings in which admissibility of the exhibits was addressed, Everhart's trial counsel stated multiple times that the only objection to the challenged exhibits was relevance, that the district court had adequately addressed those objections, and that Everhart had no further objections. As a result, the district court did not make a Rule 403 ruling as to the challenged exhibits. Thus, Everhart's contention that he may raise the Rule 403 balancing test on appeal because he received an adverse ruling on it from the district court is incorrect.

Because Everhart failed to object below to admission of the evidence on the basis of Rule 403 and did not receive an adverse ruling on that issue as to the challenged exhibits, he cannot raise it for the first time on appeal unless he establishes fundamental error. *See Carlson*,

134 Idaho at 398, 3 P.3d at 76; *see also State v. Perry*, 150 Idaho 209, 260, 245 P.3d 961, 978 (2010). However, Everhart made no argument asserting or establishing fundamental error. Accordingly, we will not address this issue for the first time on appeal.

### 3. Harmless error

Even assuming that Everhart's Rule 403 claim was preserved for appeal and that the district court abused its discretion in admitting the exhibits, any error was harmless beyond a reasonable doubt in light of the other substantial evidence of Everhart's guilt that was presented. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that an objected-to error has occurred, the state has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *Perry*, 150 Idaho at 222, 245 P.3d at 979-80.

Everhart contends that the entire case came down to a question of his credibility, as he admitted to causing the fatal injury, but claimed it to be an accident. According to Everhart, the challenged evidence could have led the jury to believe that his family was advising him to remain silent and "stick to the script" because they doubted his story or believed that he was actually guilty of the crime charged. Moreover, this was essentially the argument forwarded by the state during closing argument. As such, Everhart claims the evidence likely impacted the jury's credibility determination, thereby affecting the outcome of the trial.

We disagree. Even without the challenged exhibits, Everhart's credibility was severely undermined by his own actions before and at trial. Indeed, after promoting several fabricated stories regarding where he was and what he was doing when the child suffered the fatal injury--all of which involved him only hearing the incident or otherwise being absent or uninvolved with the injury causing event--he told a different story at trial, admitting direct involvement in the child's death. Moreover, Everhart admitted to abusing the child by hitting her on the feet three times with a belt immediately preceding the child's death. However, the physical evidence and expert testimony indicated that the abuse was much more severe than Everhart admitted. Although Everhart claimed the fatal injury was accidental and introduced a

medical expert in support thereof, several inconsistencies arose regarding that account during cross-examination and the expert's testimony was equivocal as to what caused the fatal injury. Further, the state presented expert testimony undermining Everhart's account of how the injury occurred and indicating that the child's injuries were due to nonaccidental, abusive trauma. Several expert medical witnesses testified that most of the injuries on the child's thighs, tops of her feet, and under her armpits were indicative of abuse, as were the retinal hemorrhaging and the nature of the fatal subdural hematoma.

The state also presented evidence indicating that, after inflicting the fatal injury, Everhart took the time to change the child out of and hide her pajamas, which had vomit on them as a result of the head injury; bathe the child; and position her on the kitchen floor. At some point he attempted to call his mother, but dialed the wrong number. He then called the child's mother, telling her a fabricated story of how the child was injured. Only then, at the behest of the child's mother, did Everhart call 911, taking the time to save his video game progress while doing so. In light of this substantial evidence supporting Everhart's guilt, we conclude that any error in admitting the challenged exhibits was harmless beyond a reasonable doubt.

## B.     Sentence Review

Everhart also contends that his unified life sentence, with a minimum period of confinement of twenty years, is excessive. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). However, the primary consideration is, and presumptively

always will be, the good order and protection of society. All other factors are subservient to that end. *State v. Hunnel*, 125 Idaho 623, 873 P.2d 877 (1994); *State v. Pederson*, 124 Idaho 179, 857 P.2d 658 (Ct. App. 1993). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

The mandatory minimum sentence for first degree murder is a unified life term, with a minimum period of confinement of ten years. I.C. § 18-4004. Thus, the sentence imposed is within the statutory limits and is not illegal, requiring Everhart to show that his sentence was unreasonable upon the facts of this case. To this end, Everhart argues that the district court failed to adequately consider the mitigating factors he presented and that the statutory minimum is sufficient to meet the goals of sentencing.

The record does not support Everhart's assertion. The district court specifically noted and considered all of the mitigating factors Everhart presented at sentencing and reiterated in this appeal. This included Everhart not knowing his biological father, the physical and psychological damage he suffered as a result of a horrific fire a few years earlier, his learning difficulties, his character as reported by his family and friends, his family support, his young age, and his lack of significant prior criminal conduct. Moreover, the district court put little weight on Everhart's alleged gang affiliations and the several incidents of uncharged criminal conduct as a juvenile.

Instead, the district court relied on the overwhelming evidence presented during sentencing and trial as to the extent and severity of the abuse to which Everhart subjected the child. The record supports this reliance. At trial, substantial expert testimony disclosed the catastrophic nature of the child's head injury and revealed that it was the result of abusive head trauma. In addition to the marks resulting from Everhart's admitted whipping of the child's feet with a belt at least three times, there was evidence that the child's feet had also been stomped on or struck with a blunt object. Moreover, some of the whip markings on the child's feet were made at different angles, indicating that each foot and ankle had been whipped independently. The evidence further indicated that the child had a large bruise and curved, finger-shaped markings under her armpits, consistent with being held and squeezed with great force. The evidence also showed that the child had suffered what Everhart's own expert admitted was likely a burn to her thigh area. The child's body was covered with bruises, abrasions, and markings, most of which were testified to as being consistent with abuse. Indeed, the abrasions and bruising were so recent and deep that they remained present several days later when the autopsy

was performed. This evidence showed that Everhart perpetrated severe and excruciating abuse on the child immediately preceding and including the fatal injury. As a result, the district court did not abuse its discretion in determining that a unified term of life imprisonment, with a minimum period of confinement of twenty years, was necessary to meet the goals of sentencing in Everhart's case.

## C.    Rule 35 Motion

Everhart further argues that the district court abused its discretion in denying his Rule 35 motion. This, Everhart claims, is because he supplied additional information regarding his alleged remorse and because the district court failed to consider the mitigating factors addressed above.

A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984).

Everhart failed to provide any new or additional information with his Rule 35 motion that was not already before the district court at sentencing. As noted above, the mitigating information outlined in Everhart's Rule 35 motion was considered by the district court at sentencing. Moreover, although Everhart claims that his alleged remorse for the victim and her family constitutes additional information, it does not. At sentencing, Everhart's mother testified as to his alleged remorse over the murder. His attorney also argued that Everhart was remorseful, and Everhart apologized for his actions. Thus, as noted by the district court in its order denying Everhart's Rule 35 motion, the allegedly new information regarding Everhart's remorse was already considered by the district court at the time of sentencing. Accordingly, the district court did not abuse its discretion in denying Everhart's Rule 35 motion for reduction of sentence.

## III.

## CONCLUSION

The challenged exhibits were relevant to Everhart's credibility, as they supported the state's theory that Everhart had fabricated his story of how the child was injured. Everhart failed to preserve his Rule 403 argument for appeal and, even if he had preserved it and succeeded in showing that the district court abused its discretion, any error was harmless beyond a reasonable doubt in light of the substantial evidence of Everhart's guilt. Additionally, Everhart's unified sentence of life imprisonment, with a minimum period of incarceration of twenty years, was not excessive under the facts of this case. Finally, the district court did not abuse its discretion in denying Everhart's Rule 35 motion for reduction of sentence because he failed to present any new or additional evidence in support thereof. Accordingly, Everhart's judgment of conviction and sentence for first degree murder and the district court's order denying Everhart's Rule 35 motion for reduction of sentence are affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.